IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ME2 PRODUCTIONS, INC.,

                Plaintiff,

     v.                                          1:16-cv-4055-WSD

DOES 1-14,

                Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff ME2 Productions, Inc.'s

("Plaintiff") Motion for Leave to Take Discovery Prior to Rule 26(f)

Conference (the "Motion") [3].

## I.   BACKGROUND

On August 2, 2016, Plaintiff registered the copyright for a motion picture

entitled "Mechanic:  Resurrection" (the "Work").  ([1.1]).[1]  On October 31, 2016,

Plaintiff filed its Complaint, asserting copyright infringement claims against

fourteen (14) John Doe Defendants identified only by their internet protocol ("IP")

---

[1]     The Work tells the story of a man who "has his lover (Jessica Alba) kidnapped by a foe" and then "travels[] the globe to complete three impossible assassinations."  (Compl. ¶ 1).

addresses.[2]  Plaintiff alleges that, on September 29, 2016, each Defendant infringed

Plaintiff's copyright by sharing the Work on the BitTorrent internet peer-to-peer

file sharing protocol.  ([1.2]).[3]  Plaintiff alleges further that "each Defendant

deliberately participated in a [BitTorrent] swarm . . . with other Defendants,"

"participated in a collective and interdependent manner with other Defendants,"

and were part of "a collective enterprise of shared, overlapping facts."  (Compl.

---

[2]      "An IP address is a unique number automatically assigned to devices
connected to the internet, e.g., a computer, by an Internet Service Provider."
Malibu Media, LLC v. Pelizzo, No. 12-cv-22768, 2012 WL 6680387, at *1 n.2
(S.D. Fla. Dec. 21, 2012).

[3]      BitTorrent is a modern "peer-to-peer" file sharing tool used for distributing
data via the internet.  Unlike traditional file transfer protocols that involve a central
server and the transfer of whole files between users, the BitTorrent protocol
provides a decentralized method of distributing data.  BitTorrent breaks an
individual file into small pieces that individual users then distribute among
themselves.  This facilitates faster file transfers than traditional file sharing
software that requires users to transfer whole files from a central server.

The BitTorrent protocol operates as follows.  The process begins with one
user, the "seed," who makes the file available via a BitTorrent client.  The seed
then creates a "torrent" file that contains a road map to the IP addresses of other
users who are sharing the file.  Each piece of the torrent file is assigned a unique
cryptographic hash value.  That value acts as a unique digital fingerprint that
ensures a piece of data belongs in a particular torrent file.

Other users, or "peers," then download the torrent file, which allows them to
download from other peers who possess pieces of the file.  All of these peers are
part of the same "swarm" because they are downloading pieces of the same file.
After downloading a piece of the file, each user automatically becomes a source
for this piece.  The various members of the swarm continue to exchange pieces
with one another.  Finally, once a peer has accumulated enough individual pieces
of the file, the software allows the peer to reassemble the aggregate file.  See
Pelizzo, 2012 WL 6680387, at *1–2.

¶¶ 16-17).  Plaintiff also states that "each Defendant has an IP address based in this

District and resides in or committed copyright infringement in this District."

(Compl. ¶ 7).

On November 3, 2016, Plaintiff filed its Motion, seeking "leave to issue one

or more subpoenas to Internet Service Providers ('ISPs'), including Comcast Cable

Company, for the purpose of identifying the Doe Defendants in this case."  ([3.1]

at 1).  The subpoenas, if issued, will request "the name and address of the account

holders; current and permanent addresses; telephone numbers; email address; and,

the Media Access Control ('MAC') address."  ([3.1] at 2).  Plaintiff states that this

information is not available through other means and that, without it, "Plaintiff is

left with no recourse in its efforts to vindicate its rights."  ([3.1] at 5).

## II.   DISCUSSION

### A.   Misjoinder

This case is "one of hundreds if not thousands" of copyright infringement

actions involving BitTorrent technology.  Malibu Media, LLC v. Doe, 923 F.

Supp. 2d 1339, 1341 (M.D. Fla. 2013).  "A common practice in BitTorrent

litigation is the joinder of many unidentified defendants, which raises a recurring

question of whether joinder is proper."  Id.  That issue arises here.

Rule 20 of the Federal Rules of Civil Procedure provides that "[p]ersons . . . may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  The purpose of this rule is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits."  Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n. 5 (4th Cir.2007).

"Even if the technical requirements for joinder are met, the Court 'has discretion to deny joinder if it determines that the addition of a party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense or delay.'"  Malibu Media, 923 F. Supp. 2d at 1342 (quoting Aleman, 485 F.3d at 218 n.5); see Bait Prods. Pty Ltd. v. Does 1–96, No. 6:12-cv-1780, 2013 WL 440568, at *2 (M.D. Fla. Feb. 5, 2013) ("Even if the requirements of Rule 20(a) are satisfied, a court could sever claims.").  "The Court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice."  Fed. R. Civ. P. 20(b).  "On motion or on its own, the

court may at any time, on just terms, add or drop a party.  The court may also sever

any claim against a party."  Fed. R. Civ. P. 21.

Courts, in BitTorrent copyright cases, routinely sever all of the joined

defendants but one.  See Malibu Media, 923 F. Supp. 2d at 1342; Kill Joe

Nevada, LLC v. Does 1-10, No. 1:13-cv-1516, 2013 WL 3381260, at *4 (N.D. Ga.

July 8, 2013); Breaking Glass Pictures, LLC v. Does 1-99, No. 1:13-cv-0882, 2013

WL 8336085, at *4 (N.D. Ga. Apr. 12, 2013); K-Beech, Inc. v. Does 1-47, No. 11-

cv-2968-WSD (N.D. Ga. Sept. 29, 2011).  They often do so for "practical reasons,"

including the following:

> (i) the likelihood that each John Doe defendant will assert different
> defenses, thereby adding factual and legal questions that are not
> common among all defendants, (ii) many John Doe defendants are
> proceeding pro se, and will therefore incur significant expense serving
> papers and attending depositions of all other parties to the lawsuit,
> (iii) the likelihood that many of the John Doe defendants are not the
> actual individuals who illegally downloaded the motion pictures in
> question, (iv) the likelihood that joinder will facilitate coercive
> settlements among the John Doe defendants; and (v) plaintiff's
> avoidance of paying filing fees by pursuing mass actions.

Malibu Media, 923 F. Supp. 2d at 1344 (quoting Malibu Media, LLC v. John Does

1–16, 902 F. Supp. 2d 690, 700 (E.D. Pa. 2012)).

Defendants alleged to have participated in a BitTorrent "swarm" often have

different and divergent defenses to the copyright violation claims, and to allow

them to be asserted in a single case would defeat, not enhance, judicial economy.

5

See Breaking Glass, 2013 WL 8336085, at *4 ("[D]efendants accused of illegally

downloading copyrighted materials are likely to assert different defenses."); see id.

("[D]efendants in these types of cases assert a variety of individualized

defenses . . . [which] creates judicial inefficiency when numerous defendants are

joined.  This consideration is significant regardless of whether the defendants have

actually begun to assert the individualized defenses." (citations and international

quotation marks omitted)).  Different defenses are asserted on the basis of the

circumstances of each defendant.  "Some may claim that the download did not

occur, they were not involved in it, or their computer was incapable of the claimed

conduct.  The likelihood of different defenses demonstrates that each claim should

be considered separately."  Raw Films, Inc. v. Does 1-32, No. 1:11-cv-2939, 2011

WL 6840590, at *2 n.4 (N.D. Ga. Dec. 29, 2011); see Malibu Media, LLC v. Does

1-28, 295 F.R.D. 527, 533 (M.D. Fla. 2012) ("The likelihood of multiple unrelated

motions and defenses leads to a conclusion that there are few, if any, litigation or

judicial economies to be gained by joining these claims, notwithstanding the

allegations that the Doe Defendants participated in the same swarm."); Bubble

Gum Prods., LLC v. Does 1-80, No. 12-cv-20367, 2012 WL 2953309, at *4 (S.D.

Fla. July 19, 2012) ("[D]ue to the imprecise manner in which the Plaintiff

identifies alleged infringers, namely by IP addresses, defendants can assert an

unquantifiable number of different factual scenarios to establish that they did not download the copyrighted work.").

Joinder here imposes "numerous logistical burdens" on both the Doe Defendants and the Court. Breaking Glass, 2013 WL 8336085, at *4. "Each defendant must serve every other defendant with all pleadings, a task that is unnecessarily onerous, particularly for the John Doe Defendants in this case who might proceed *pro se*." Id. "Even more frightening to the Court is that all of the defendants have a right to be at the other defendants' depositions and all courtroom proceedings, creating a situation that may be logistically impossible without instituting the use of mini-trials." Kill Joe Nevada, 2013 WL 3381260, at *4. In contrast, severance would result in minimal prejudice to Plaintiff. Id.

"[T]he majority of district courts—including courts in this district—that have considered the swarm joinder theory have rejected it." Breaking Glass, 2013 WL 8336085, at *4; see Kill Joe Nevada, 2013 WL 3381260, at *4. Because joinder in this case would not result in judicial economy, the Court exercises its discretion to sever the claims against each Defendant. John Does 2-14 are dismissed without prejudice.

B.      Subpoenas

"[C]ourts in this district routinely grant limited expedited discovery in cases such as this where the plaintiff knows only the defendants' IP addresses." Breaking Glass, 2013 WL 8336085, at *5; see Kill Joe Nevada, 2013 WL 3381260, at *5.  The Court grants Plaintiff's request for limited expedited discovery of Defendant Doe 1, subject to the restrictions detailed below.

Rule 26(c)(1) permits the Court to issue, for good cause, "an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  Good cause encompasses not only "matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties."  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34-35 (1984).  The discovery process gives litigants an opportunity to obtain "information that not only is irrelevant but if publicly released could be damaging to reputation and privacy . . . .  [There is] a substantial interest in preventing this sort of abuse of [] processes."  Id. at 35.

BitTorrent mass copyright actions are now common.  The potential for litigation abuse is real, and it is necessary to carefully control the discovery process.  In a similar case in California, the plaintiff obtained the information of the subscriber associated with an IP address implicated in alleged copyright

infringement.  The plaintiff then sought additional early discovery to inspect the

"Subscriber's electronically stored information and tangible things, such as

Subscriber's computer and the computers of those sharing his Internet network, for

the purpose of finding the individual that unlawfully violated Plaintiff's

copyrighted works."  Boy Racer, Inc. v. Does 1-52, 11-cv-2329-PSG (N.D. Cal.

Sept. 13, 2011).  The court observed that "every desktop, laptop, smartphone, and

tablet in the subscriber's residence, and perhaps any residence of any neighbor,

houseguest or other sharing his internet access, would be fair game."  Id.  The need

for reasonable management of the scope of discovery is self-evident.

In light of the allegations in this case, the Court chooses to strictly manage

the discovery requested.  The Court will allow Plaintiff to issue a subpoena to

Comcast Cable Company to produce the name, address, telephone number, email

address, and Media Access Control address for the IP address for Defendant Doe 1

(the "Identity Information") to outside counsel for the Plaintiff who has appeared

in this case (the "Outside Counsel").  Outside Counsel shall not disclose the

Identity Information to any other person without the Court's written approval.

Outside Counsel may provide the Identity Information to the in-house counsel at

Plaintiff who is responsible for this specific case.  The Identity Information may be

used solely in and only for the purposes of this action.  These protections are

imposed to protect the Defendant's privacy interests.  See <u>K-Beech, Inc. v. Does</u> <u>1-47</u>, No. 11-cv-2968-WSD (N.D. Ga. Sept. 29, 2011).

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Does 2-14 are **SEVERED** and the claims against them are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference [3] is **GRANTED** subject to the restrictions stated in this Opinion and Order.

**SO ORDERED** this 28th day of November, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE